**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KATHERINE BURNS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-CV-152-JHP** |
| | ) | |
| **GAROLD HOLCOMBE, an individual,** | ) | |
| **CHRISTOPHER EPPERLY, an** | ) | |
| **individual, JENNIFER JOHNSON,** | ) | |
| **an individual, BOARD OF COUNTY** | ) | |
| **COMMISSIONERS OF THE COUNTY** | ) | |
| **OF SEMINOLE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are Defendants Board of County Commissioners of Seminole County, Garold Holcombe, Christopher Epperly, and Jennifer Johnson's Motions for Summary Judgment and Briefs in Support [Doc. Nos. 70,74, and 75], Plaintiff's Response in Opposition To Defendants' Motions [Doc. Nos. 93,115, and 116], and Defendants' Replies To Plaintiff's Responses [Doc. Nos. 112, 121, ans 122]. Also pending before this Court is Plaintiff's Motion to Dismiss [Doc. No. 95], Defendants' Responses in Opposition to Plaintiff's Motion [Doc. Nos. 102 and 103], and Plaintiff's Reply [Doc. No. 109] For reasons set forth below Defendants' Motions for Summary Judgment are **GRANTED IN PART** and **DENIED IN PART** and Plaintiff's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Starting in late 2007, the Plaintiff, Katherine Burns, began making numerous hang up phone calls to the Seminole County 911 Dispatch Center, the Seminole County Sheriff's Department as

well as other places. Burns admitted in her deposition that she understands calling someone and hanging up repeatedly is harassing and annoying. The Plaintiff contends in November, 2007, police officers, at Johnson's urging, came to her home and questioned her while, at the time she was only 17. Burns contends the officers came to her home and questioned her without her parents' approval or supervision and then "required her" to fill out a voluntary statement and seized her telephone. [Doc. No. 91] Burns admits she made numerous hangup telephone calls to the call center's non-emergency, administrative line, but denies intending to harass or annoy the *dispatch center*. Burns also contends the dispute began when she first received a call from Johnson threatening Burns to stay away from her boyfriend. Burns contends the person Johnson was talking about was Johnson's husband who had been flirting with Burns at the McDonalds. [Doc. No. 91] In early March, 2008, Burns made 27 prank calls to Defendant Jennifer Johnson's personal cell phone, where she would hang up once the phone was answered.

Burns was arrested on March 5, 2008, for making false 911 calls and for making harassing phone calls and text messages.[1] On March 7, 2008, the Plaintiff was criminally charged with numerous misdemeanor crimes related to her March 5 arrest including numerous counts of calling 911 with false alarm. [Doc. No. 70-3] On April 6, 2009, after a bench hearing, a judge found the Plaintiff guilty of one count of harassment by use of an electronic devise. [Doc. No. 70-4]

Plaintiff contends that during her arrest, when Defendant Garold Holcombe placed the handcuffs on her, the left thumb area of her hand was injured. During Plaintiff's deposition she admitted that Officer Holcombe might not have meant to hurt her and that the injury could have been

---

[1]The Plaintiff contends she was only arrested for making false 911 calls. The Arrest/Incident report completed by the arresting officers indicates the arrest was also for making harassing phone calls and text messages. [Doc. No. 70-8]

an accident. [2] [Doc. No. 70-2] Burns alleges her left thumb area was bruised and swollen for a month or two, but nothing was broken. She was given a brace to wear for a month or so, which she only wore for part of the time. She was also given pain medication, but she did not take very much of the medication. Burns did not complain to Officers Holcombe or Epperly that she was in any pain during her arrest or booking into jail. She also did not seek any medical attention from the jail staff. The Plaintiff returned to work in a restaurant shortly after her arrest where she resumed the use of both hands.

The parties are in dispute regarding the factual circumstances surrounding Burns's arrest. The Defendants contend Officer Holcombe was at the dispatch center on the morning of March 5, 2008, taking a statement from defendant Johnson who was a 911 dispatcher when another prank call came into the dispatch center from Burns's phone number. The Defendants' contend the call center computers prompted information showing Burns's phone number, approximate location, and other general information. Holcombe, Johnson, and another call center employee by the name of Marie Grant contend they all witnessed the call come into the call center. Holcombe also contends he saw a text message on Johnson's phone from Burns which said "I know more about you than you think." Holcombe argues, based on these observations he felt he had enough information to believe a misdemeanor had been committed in his presence and he made the decision to arrest Burns. Holcombe contacted Officer Epperly to assist him with the arrest. Officer Holcombe also contends

_____

[2]Q:      Okay. Who – who did this? Who grabbed your arm?
  A:      I don't remember. I think it was Holcombe
  Q:      Okay. And do you think that Officer Holcombe had any intent to harm you?
  A:      I don't know. He might not have meant to.
  Q:      Do you think it could have been an accident?
  A:      It could have been, yeah.
[Doc. No. 70-2]

that he saw Burns when he walked into the McDonald's. At that time he called the number that he saw at the call center from his cell phone and heard Burns's cell phone ring in her pocket. He also noticed her looking at the phone in her pocket. He then immediately ended the call and completed the arrest of Burns.

The Plaintiff contends that only after Johnson made numerous appeals to officers Epperly and Holcombe did they finally agree to arrest her. Burns stated Johnson did not appear to be threatened or in any danger when she filed her police report because on the form she completed she under "sex" she answered "yes", under "height" she answered "short" and under "weight" she wrote "fat". [Doc. No 115-8] Burns also contends the decision to arrest her "was made well before" the call which Holcombe contends occurred in his presence. [Doc. No. 115]. Officer Epperly and Defendant Johnson engaged in a telephone conversation regarding arresting Burns:

| Epperly: | Hey it's county 9, what's going on? |
| Johnson: | Have you talked to Garold? |
| Epperly: | Yea I talked to him while I down here I'm going to finished writing this guy a couple of tickets and I'm going to arrest her. |
| Johnson: | Oh my god, are you really? |
| Epperly: | Yea. |
| Johnson: | Oh, I love you so much. |
| Epperly: | Garold is on his way up there to meet with y'all to get y'all's report |
| Johnson: | Okay, well, she's still calling and Tommy is on his way to the cellular company to have her phone shut off 'cause she called 911 all day yesterday too. |
| Epperly: | Okay, well make sure you have all of that in your repot. |
| Johnson: | Alrighty |
| Epperly: | I'll go ahead and hook her up and take her that way. |
| Johnson: | Well she should be there at McDonald's when you get there, that's where she works |
| Epperly: | Yea, that's where I'm headed. I'll give y'all a holler back later. |
| Johnson: | Okay, I can't wait. |

Epperly:     Alright, bye bye.
[Doc. No. 115-9]

Plaintiff contends the arrest caused her to lose her job and that officers Epperly and Holcombe made statements to her supervisors that she was a criminal and had been making prank calls to 911 while at work.

In this case, there are few facts to which the parties agree, however, in making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999).

## PROCEDURAL HISTORY/OTHER PENDING MOTIONS

The Plaintiff, Katherine Burns, filed the pending litigation on Mach 4, 2009, in the District Court of Seminole County, Oklahoma.  On April 16, 2009, the Defendants removed the case to the District Court for the Eastern District of Oklahoma.  On May 7, 2010, the Seminole County Board of County Commissioners (hereinafter "the Board") filed its Motion for Summary Judgment and on May 19, 2010, the remaining Defendants filed their Motions for Summary Judgment currently before the Court.  In the Plaintiff's Response to the Board's Motion for Summary Judgment the Plaintiff included a proposition which read "Plaintiff is Entitled To Summary Judgment For Negligence Per Se." [Doc. No. 91] The Board then filed a Motion to Strike the Plaintiff's Motion for Summary Judgment, construing this plea by the Plaintiff as a summary judgment motion, and requesting the Court to strike this "motion" as untimely filed since the deadline for dispositive motions had passed. [Doc. Nos. 92 and 94]   The Plaintiff responded that her request was not a motion subject to Fed.R.Civ.P. 56, but rather an "entitlement" to summary judgment which arose out of the facts listed in the Defendant's motion. [Doc. No. 110].  Whether the Plaintiff's request is

made by way of an untimely motion or a request pursuant a sense of "entitlement" to summary judgment, as detailed below, this Court finds the Plaintiff is not entitled to summary judgment on this issue, therefore, this issue is **MOOT**.

There are also motions from each of the Defendants requesting certain exhibits which were attached to the Plaintiff's responses to the summary judgment motions be stricken since the Defendants contend they are inadmissible documents and as such, should not be relied upon by this Court in determining summary judgment. [Doc. Nos. 111 and 125] The Court has reviewed the Defendants' Motions, the Plaintiff's Responses [Doc. Nos. 123 and 130], the Defendants' Replies [Doc. Nos. 124 and 131] as well as the documents at issue. This Court recognizes that "at the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible." *Bryant v. Farmers Ins. Exchange*, 732 F.3d 1114 (10th Cir. 2005) citing *Hardy v. S.F. Phosphates Ltd.,* 185 F.3d 1076, 1082 n. 5 (10th Cir.1999). The case law is clear that "(1) the content of summary judgment evidence must be generally admissible and (2) if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.,* the evidence must be based on personal knowledge." *Id*.

The Board's motion moves to strike Plaintiff's exhibits 2, 4, 6, 7, 9, 10, 13, 14, 15, 16, and 17. Exhibits 2, 4, and 10 are telephone records and summaries of telephone logs. The Plaintiff argues that these records were admitted into the Plaintiff's criminal trial, but has made no effort to authenticate the documents for purposes of this litigation. The Court has no way of knowing whether these summaries or logs are an accurate representation of the calls which actually occurred on these dates. As such, this Court will not consider these records in determining summary

judgment. Exhibits 6, 7, 14, and 15 are unsworn statements of several people. Documents 6 and 7 are statements from Defendant Jennifer Johnson. Pursuant to Fed.R.Evid. 801(d)(2)(a) a statement offered against a party and is the party's own statement, such statement is not hearsay and is admissible. The Defendant contends the statement should not be considered because it is unsworn, however, the Tenth Circuit has allowed unsworn statements as evidence in summary judgment motions when the statement is a party opponent's. *See Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008) As such, this Court will allow the statements of Defendant Johnson to remain as exhibits to the Plaintiff's response. The other statements are unworn statements of third parties and therefore, will not be considered by this Court in determining the summary judgment motions. See Fed.R.Civ.P. 56(c)(2) and (e).

This Court will strike and refuse to consider exhibits 9, and 17. Exhibit number 9, is a one page document with no authentication or anything to inform the Court of its origin. As such the Court finds it is not authenticated. "Documents submitted in support of or in opposition to a motion for summary judgment 'must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) [of the Federal Rules of Civil Procedure] and the affiant must be a person through whom the exhibits could be admitted into evidence.' " *In re Hentges*, 373 B.R. 709, 716 (Bkrtcy. N.D.Okla. 2007) citing *Hal Roach Studios, Inc. v. Richard Feiner and Co.,* 896 F.2d 1542, 1550-51 (9th Cir.1990). (Granting a motion to strike because bank records contained in an exhibit to a summary judgment response were not authenticated by an affidavit or otherwise).

Exhibit 17 is also not authenticated and contains hearsay statements. Although the Plaintiff argues it is not being offered for the truth of the matter asserted, in her response to the summary judgment motions, she uses the documents to support the proposition that the Defendant officers

made statements to the Plaintiff's employers which can be found in these documents. As such, the documents are being offered for the truth of the matter asserted. There are no signatures on the documents showing evidence of their authenticity. The documents are unauthenticated, and incomplete. As such, the Court will not consider them in ruling on the summary judgment motions. Exhibit number 13 is a picture of a telephone with an unidentified telephone number on the screen. Although initially unidentified, the Plaintiff submitted an Affidavit from Katherine Burns which identifies this as her cellular telephone. Although the Court still has no means of telling who is calling the phone as it simply shows as an unidentified caller, the photograph has been properly authenticated, so the Court will consider the photograph in ruling on the summary judgment motions.

Finally, exhibit number 16 is the pleading filed in the state court criminal trial seeking a new trial. Since this document is a pleading filed in the related criminal case, the Court will allow it to remain an exhibit to the Plaintiff's response in opposition.[3] The Board's motion is hereby **GRANTED IN PART AND DENIED IN PART**.

The individual Defendants filed an almost identical motion to strike exhibits on June 18, 2010. [Doc. No. 125] Defendants Holcombe, Epperly, and Johnson also request this Court strike the Plaintiff's exhibits 2, 4, 6, 7, 9, 10, 13, 14, 15, 16, and 17 to the Plaintiff's responses to their Motions for Summary Judgment. [Doc. Nos. 115 and 116]. This Court has reviewed the documents requested to be stricken as well as the briefs submitted by the parties. The exhibits at issue are

_____

[3]The Court notes for the record that since the majority of the Plaintiff's claims were either not decided by this Court on the merits or were disposed of on technical grounds, as set forth in the remainder of the Opinion and Order, the majority of these exhibits were not necessary to determine summary judgment.

identical to the exhibits sought to be stricken from the Plaintiff's Response to the Board's Motion for Summary Judgment. Therefore, for the same reasons as discussed above, this Court **GRANTS** the Defendants' Motion to Strike [Doc. No. 125] as to Plaintiff's exhibits 2, 4, 9, 10, 14, 15, and 17, and **DENY** Defendants' Motion as to Plaintiff's Exhibits 6, 7, 13, and 16.[4]

## MOTIONS FOR SUMMARY JUDGMENT/MOTION TO DISMISS

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249.

In conjunction with the summary judgment motions this Court also has before it the Plaintiff's Motion to Dismiss this case without prejudice. The Defendants have objected to this motion since it was filed after the summary judgment motions were already on file. Pursuant to Fed.R.Civ.P. 41, the Plaintiff may voluntarily dismiss the case without Court Order, only if filed before the filing of summary judgment motions, or if the Defendants agree. Since that is not the case here, the Plaintiff seeks dismissal pursuant to Rule 41(a)(2) whereby the Plaintiff can seek dismissal

---

[4]The Defendants' have also filed a Motion for Guidance From the Court [Doc. No. 117] regarding a conflict between the parties over pretrial deadlines. This Motion was mooted by this Court's Minute Order entered on June 11, 2010, striking the pretrial conference and all pretrial deadlines.

by Court order. Rule 41(a)(2) states "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." "The rule is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357 (10th Cir.1996) (internal quotation omitted). "Absent 'legal prejudice' to the defendant, the district court normally should grant such a dismissal." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir.1997).

## I. CLAIMS AS TO DEFENDANTS EPPERLY AND HOLCOMBE

The Plaintiff has pled multiple claims against Defendant Epperly and Holcombe. Specifically, she seeks compensation for violations of 42 U.S.C §1983, for violating her civil rights by (1) using excessive force, (2) conspiring to prepare false reports and making false allegations, (3) unlawfully arresting and searching the Plaintiff and unlawfully seizing her cellular telephone. [Doc. No. 26] The Plaintiff also raises claims under the Government Tort Claims Act, 51 O.S. §151, *et seq.* for (1) tortious false arrest, (2) slander per se, (3) civil conspiracy, and (4) negligence.

### A. §1983 Claims

The Plaintiff alleges Defendants Epperly and Holcombe falsely arrested her, conspired to make false statements regarding whether there was probable cause to arrest her or whether Holcombe actually had cause to believe a misdemeanor had been committed in his presence, and then when she was arrested, she claims the officers used excessive force against her, illegally searched her person and seized her cellular phone. The Defendants deny each of the charges as well as contend these claims are barred by collateral estoppel and the holding of *Heck v. Humphrey*, 512 U.S. 477 (1994). In this case the doctrine of collateral estoppel would normally bar some of the Plaintiff's claims since they were not raised at the criminal proceedings. However, the Plaintiff's

criminal conviction is still on appeal and her request for a new trial is pending before the state court. Collateral estoppel only pertains to "valid and final" judgments. *See Harris v. Washington*, 404 U.S. 55, 56 (1971) ("'Collateral estoppel' means simply that when issue of ultimate fact has once been determined by valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.") In Oklahoma, an issue on appeal is not considered to be a "valid and final" judgment. *See Coppedge v. Clinton*, 72 F.2d 531 (10th Cir. 1934); *City of Tulsa v. Wells*, 1920 OK 234, 191 P. 186. As such, this Court finds collateral estoppel does not apply.

The Defendants also argue the case should be dismissed because of the rule announced in *Heck v. Humphrey, supra*. In *Heck*, the United State Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit. *Id*. at 487-488.

Therefore, under *Heck* this Court must first determine whether the §1983 allegations would render the criminal conviction invalid. The *Heck* Court provided some guidance in this area:

> For example, a suit for damages attributable to an allegedly

unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the §1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, see *Murray v. United States,* 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988), and especially harmless error, see *Arizona v. Fulminante,* 499 U.S. 279, 307-308, 111 S.Ct. 1246, 1263-1264, 113 L.Ed.2d 302 (1991), such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, see *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986), which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).
*Id.* at FN.7

Although the *Heck* Court instructed that §1983 actions regarding illegal search and seizure and false arrest would not "*necessarily*" imply success on the merits of §1983 action would render the criminal conviction invalid, this Court finds that this case is one where the underlying conviction is being attacked. The Plaintiff is claiming, not only that the officers arrested her without probable cause or a warrant, but that they lied on the police incident reports and under oath at her trial in order to establish probable cause and obtain a conviction against her. Plaintiff's claims that these officers had no basis for arresting her, or searching her and seizing her property, and lied at her criminal trial regarding the basis for her arrest and the conduct they allegedly witnessed, attacks not only the conduct of these officers but the basis for her conviction. The Plaintiff does, however, bring a §1983 claim for excessive force against these officers. This Court finds that this claim is separate and distinct from the other claims raised by the Plaintiff in that it does not have any bearing on the Plaintiff's criminal conviction; therefore, this Court will address, the merits of this claim in this Opinion and Order.

Creating even more of a concern to this Court is the fact that the Plaintiff's criminal conviction is on appeal. The *Heck* Court addressed this issue stating:

> For example, if a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings. See *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).
>
> Moreover, we do not decide whether abstention might be appropriate in cases where a state prisoner brings a §1983 damages suit raising an issue that also could be grounds for relief in a state-court challenge to his conviction or sentence. Cf. *Tower v. Glover,* 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984).
>
> *Heck*, 512 U.S. 477, FN.8

The Court is aware of its ability to abstain from ruling on these matters during the pendency of the Plaintiff's criminal appeal; however, the Plaintiff has filed a Motion to Dismiss this suit without prejudice, therefore, dismissing these claims without prejudice for refiling is a more appropriate remedy. The Defendants objected to the Plaintiff's Motion to Dismiss claiming they would incur prejudice if the suit is dismissed without prejudice. However, this Court finds these claims are not ripe for ruling until the criminal appeal is completed. Therefore, Defendant's Motion to Dismiss certain claims without prejudice is **GRANTED** as to her §1983 claims against Officers Epperly and Holcombe for (1) conspiring to prepare false reports and making false allegations and (2) unlawfully arresting and searching the Plaintiff and unlawfully seizing her cellular telephone. These claims are hereby dismissed without prejudice.

## B.    Excessive Force

As noted earlier, this Court does not consider the Plaintiff's excessive force claim to fall within the *Heck* parameters. As a result, this Court will address the merit of Plaintiff's claim for excessive force against officers Holcombe and Epperly.

Officers Holcombe and Epperly contend, among other things, the Court should grant summary judgment in their favor because they are to entitled qualified immunity. Qualified immunity shields officers from suit for official acts, as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 201-202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)(internal citations omitted). As a result, The Supreme Court has repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.*

This Court's review of summary judgment motions in the qualified immunity context differs from that applicable to review of other summary judgment motions. *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* (citing *Pearson v. Callahan,* --- U.S. ----, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009)); *see Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see also Whittier v. Kobayashi,* 581 F.3d 1304, 1307 (11th Cir.2009). In determining whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *see Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009)(noting that generally "we accept the facts as the plaintiff alleges them"). "[B]ecause at summary judgment we are beyond the pleading

phase of the litigation, a plaintiff's version of the facts must find support in the record. . ." *Thomson v. Salt Lake County,* 584 F.3d 1304, 1312 (10th Cir.2009)(internal citations omitted); *see also Estate of Larsen ex rel. Sturdivan v. Murr,* 511 F.3d 1255, 1258 (10th Cir.2008).

If the Plaintiff is successful in demonstrating Officers Epperly and Holcombe violated a clearly established constitutional right, then the burden shifts back to the Defendants, who must prove that "no genuine issues of material fact" exists and that the Defendants "[are] entitled to judgment as a matter of law." *Gross v. Pirtle,* 245 F.3d 1151, 1156 (10th Cir.2001). Therefore, the Defendants still bear the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. *See Olsen v. Layton Hills Mall,* 312 F.3d 1304 ,1312 (10th Cir. 2002) citing *Farmer v. Perrill,* 288 F.3d 1254, 1259 (10th Cir. 2002). "When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be 'properly denied.'" *Olsen,* 312 F.3d at 1312 citing *Salmon v. Schwarz,* 948 F.2d 1131, 1136 (10th Cir.1991).

Prior to the Supreme Court's decision, in *Pearson,* courts were mandated, by *Saucier,* to engage in a structured two-step "sequence for resolving government officials' qualified immunity claims." This means the Court first decided whether "the facts alleged show[ed] the officer's conduct violated a constitutional right." *Saucier,* 533 U.S. at 201. Following this inquiry, a court had to determine whether the right violated was clearly established when violation occurred. *Id. Pearson* modified this formula, by reconsidering *Saucier's* "rigid order of battle." *Pearson,* 129 S.Ct. at 815. As a result, district courts may "exercise their sound discretion in deciding which of the two prongs" to address first. *Id.* Given this choice, this Court opts for the *Saucier* procedure.

In the first step of the qualified immunity analysis the plaintiff must first "demonstrate that

the defendant's actions violated a constitutional or statutory right." *Nelson v. McMullen,* 207 F.3d 1202, 1206 (10th Cir.2000) (quotation omitted). In doing so the courts look at the reasonableness of the Officer's conduct. In this analysis the Court asks whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Reasonableness "must be judged from the perspective of a reasonable officer on the scene," who is "often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-397.

In this case, the Plaintiff contends officers Epperly and Holcombe injured her wrist when placing the handcuffs on her. This Court has viewed the video of the arrest which was submitted as an exhibit to the Board's motion for summary judgment. From this Court's review of the video, the arrest appears to take only approximately 20 seconds and occurs without any scuffle or altercation. The Plaintiff appears to leave with the officers willingly and there appears to be no sign of a struggle. The Plaintiff states officer Holcombe bruised her thumb and wrist area when he placed handcuffs around her wrists, however, in her deposition she admits she made no complaints to the officers at the time of the arrest, and made no complaints to the jailers while she was being booked into jail. Further, the Plaintiff stated in her deposition that she thought the actions by Holcombe which caused her injury could have been an accident. She makes no allegations that Officer Epperly hurt her or was excessively forceful with her. The injuries she claims she suffered were some bruising and swelling but that nothing was broken. She states in her deposition she was given a brace to wear and some medication for the pain but she did not wear the brace very long and did not

take much of the medication.

In order for Plaintiff's excessive force claims to reach the level of a constitutional violation necessary to prevail on an excessive force claim, she must have more than de minimus injuries. See *Hudson v. McMullian*, 503 U.S. 1, 2 (1992); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). The Tenth circuit in *Cortez*, addressed a case factually similar and held:

> Although Rick Cortez complained to the officer that the handcuffs were too tight, the summary judgment record presents too little evidence of any actual injury. We believe that a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional.
> The only evidence in the record is his affidavit that the handcuffs left red marks that were visible for days afterward. Aplt.App. at 88. This is insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs is otherwise justified.
> We hold that the force established does not exceed what would have been reasonable to effectuate a lawful arrest under these circumstances. Therefore, whether or not the arrest itself was lawful, Plaintiffs' claim that Defendants used excessive force against Rick Cortez should not survive summary judgment. Even taking Plaintiffs' allegations as true and viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have not established that Defendants' use of force against Rick Cortez violated his Fourth and Fourteenth Amendment right to be free from the use of excessive force.
> *Id.*

Such is the case here. The only evidence in the record of the Plaintiff's injuries is her deposition testimony which states that she had only minor bruising and swelling which she required minimal care. In light of the de minimis injuries the Plaintiff sustained, the Court finds the Defendants are entitled to summary judgment on Plaintiff's excessive force claim. Therefore, Defendants Epperly and Holcombe's Motions For Summary Judgment as to the excessive force claim is hereby **GRANTED**. This claim is dismissed with prejudice.

### C.     Causes of Action Under the Government Tort Claims Act

The Plaintiff also brings causes of action against officers Epperly and Holcombe for tortious false arrest and assault, slander per se, civil conspiracy, and negligence pursuant to the Government Tort Claims Act (hereinafter "GTCA"). The Plaintiff discusses the argument that the individual defendants are immune from suit under the GTCA in her response to Defendant Johnson's summary judgment motion and incorporates by reference that same argument as it applies to Defendants Epperly and Holcombe. In the Plaintiff's brief she argues that the individual Defendants (Johnson, Epperly and Holcombe) were acting in their official capacity, in the scope of their employment, when these torts were committed therefore, they can be held personally liable under the GTCA. Plaintiff admits in her summary judgment response that "all of the alleged wrongful acts in this case were committed in conjunction with Johnson's role as a dispatcher.[5]" [Doc. No. 116]

Although the Plaintiff contends the GTCA does not offer immunity to employees who act while they are on the clock, it does offer immunity to actions committed by government employees conducted within the scope of their employment:

> C. Suits instituted pursuant to the provisions of this act shall name as defendant the state or the political subdivision against which liability is sought to be established. *In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant* with the exception that suits based on the conduct of resident physicians and interns shall be made against the individual consistent with the provisions of Title 12 of the Oklahoma Statutes.
> 51 O.S. §163 (c) (Emphasis added)

The Plaintiff cites several cases to support her proposition that liability can be imputed to

---

[5]This section was incorporated by reference into Plaintiff's response to Defendant Epperly and Holcombe's Summary Judgment Motion as a response to the Defendants claim that they were entitled to relief under the GTCA. This Court will construe this as meaning the Plaintiff believes Epperly and Holcombe to also have acted in their official capacity.

the individual officer despite the fact the actions were done in the course of his/her employment; however, the cases cited by the Plaintiff actually deal with *employer liability* for the actions of an employee who committed certain acts during the course of employment, not the liability of the individual officer.[6]  The Oklahoma Supreme Court recently addressed this matter in *Shepard v. CompSource Oklahoma*, 2009 OK 25, 209 P.3d 288, and stated:

> The Legislature has provided immunity for the state employees acting within the scope of their employment. 51 O.S.2001 § 152.1(A). This immunity relieves the state employees of private liability for tortious conduct and allows them to perform their duties and make decisions on behalf of the State free from fear of suit. *Anderson v. Eichner,* 1994 OK 136, ¶ 10, 890 P.2d 1329, 1336. The State assumes liability for loss resulting from the torts of its employees acting within the scope of their employment and such liability is exclusive and in place of all other liability of an employee at common law or otherwise. 51 O.S.2001 § 153.
> *Shepard*, 2009 OK 25, ¶25, 209 P.3d at 294.

In light of the Plaintiff's admission these individual Defendants were acting within the scope of their employment, the clear language of the GTCA and recent case law evidencing the immunity

---

[6] The cases cited by the Plaintiff in support of his contention are: *N.H. v. Presbyterian Church*, 1999 OK 88, ¶14, 998 P.2d 592, 598-599 ("Nevertheless, an assertion that an act is accomplished during an employment activity is insufficient to assess liability *against the employer* unless the act was done to accomplish the assigned work."); *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶20, 212 P.3d 1158, 1167 ("*A municipality* is not immunized from a negligence claim based on its officers' actions in the midst of law enforcement if the tortious acts were committed within the scope of employment."); *Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914 (In determining whether the city was liable for actions of an officer, the Court concluded whether the officer acted within the scope of his employment was a jury question.); *Baler v. Saint Francis Hosp.,* 2005 OK 36, ¶10, 126 P.3d 602, 605 ("To hold *an employer* responsible for the tort of an employee, the tortious act must be committed in the course of the employment and within the scope of the employee's authority."); *Bierman v. Aramark Refreshment Services, Inc.*, 2008 OK 29, ¶14 (same); *DeCorte v. Robinson*, 1998 OK 87, 969 P.2d 358, (City appealed jury's finding of liability against it after determining that officer acted within the scope of his employment.  Individual liability was also found against the officer but only as to civil right violations, not on GTCA.)

from suit provided to individual employees of a government agency or political subdivision acting within the scope of his/her employment, this Court finds Defendants Epperly and Holcombe are entitled to summary judgment on the tort claims of false arrest and assault, slander per se, civil conspiracy and negligence. Defendants' Motion for Summary Judgment is hereby **GRANTED** as to these claims. These claims are dismissed with prejudice.

## II.      CLAIMS AS TO DEFENDANT JENNIFER JOHNSON

This Court's finds Defendant Johnson's summary judgment motion to be very similar to that of Defendants Epperly and Holcombe's as detailed above. The Plaintiff has asserted claims against Johnson for (1) a violation of her civil rights by conspiring to prepare false reports and making false allegations which lead to her unlawful arrest, (2) slander per se, (3) civil conspiracy, (4) and negligence.

### A.      §1983 Claims

For the same reasons as set forth in section I(A) of this Opinion and Order, this Court grants Plaintiff's Motion to Dismiss, without prejudice, the §1983 claims against Defendant Johnson. This Court finds that the ongoing criminal appeal could have an impact on the Plaintiff's claims against Defendant Johnson or alternatively, this Court's determination of these matters could impact the state Court's rulings in the ongoing criminal appeal. As such, Plaintiff's Motion to Dismiss the §1983 claims against Defendant Johnson is **GRANTED** and these claims are hereby dismissed without prejudice with leave to re-file.

### B.      Causes of Action Under the Government Tort Claims Act

For the same reasons as set forth in section I(C) of this Opinion and Order, this Court grants Defendant Johnson's Motion for Summary Judgment as to Plaintiff's claims of slander per se, civil

conspiracy, and negligence. The Plaintiff admitted in her response brief that "all of the alleged wrongful acts in this case were committed in conjunction with Johnson's role as a dispatcher." [Doc. No. 116] Therefore, under 51 O.S. §163(c) Defendant Johnson is immune from suit in her individual capacity. Defendant Johnson's Motion for Summary Judgment is hereby **GRANTED** as to Plaintiff's causes of action for slander per se, civil conspiracy, and negligence. These claims are dismissed with prejudice.

## III. CLAIMS AS TO DEFENDANT SEMINOLE COUNTY BOARD OF COUNTY COMMISSIONERS

The Plaintiff brings only claims under the GTCA against the Board: (1) False arrest and assault, (2) Slander per se, and (3) Negligence for failure to train and supervise. The case law construing the GTCA has "consistently held that a municipality is liable for the tortious acts of police officers committed within the scope of employment as defined by the GTCA." *Tuffy's Inc., v. City of Oklahoma City*, 2009 OK 4, ¶20, 212 P.3d 1158.

### A. False Arrest

Plaintiff contends that, as Epperly and Holcombe's employer, the Board is responsible under respondeat superior the false arrest of the Plaintiff. The Defendant contends that since the Plaintiff was convicted, she is precluded from challenging the existence of probable cause for the arrest. This Court agrees with the Defendant that a conviction precludes the Plaintiff from challenging the validity of her arrest under collateral estoppel. *Franklin v. Thompson*, 981 F.2d 1168, 1170 (10th Cir. 1992) However, as previously discussed in section I(A) of this Opinion and Order, under Oklahoma law, a conviction is not final and subject to the collateral estoppel doctrine until the appeals are completed. The Plaintiff's conviction is still subject to appeal in the state court and therefore, not subject to the collateral estoppel doctrine. As such, this Court finds this issue would be more

appropriately addressed once the Plaintiff's appeal is completed. The Plaintiff has filed a Motion to Dismiss this case without prejudice and "absent 'legal prejudice' to the defendant, the district court normally should grant such a dismissal." *Ohlander,* 114 F.3d at 1537. This Court finds there is no legal prejudice to the Defendant in dismissing this claim, without prejudice, therefore, Plaintiff's motion to dismiss, without prejudice is **GRANTED** as to the false arrest claim against the board. This claim is hereby dismissed without prejudice.

### B.      Assault and Battery

The Plaintiff asserts a claim for tortious assault and battery[7] claim against the Board claiming injuries she allegedly sustained when officers Epperly and Holcombe arrested her. The Board contends the officers did not have the requisite intent to constitute an assault as the Plaintiff testified in her deposition that the injury could have been caused by an accident. The Plaintiff contends that in Oklahoma the intent necessary is not the intent to cause the harm, but the intent to do the act. *See Keel v. Hainline*, 1958 OK 201, 331 P.2d 397. However, in Oklahoma, "an action for assault and battery will not lie for the force when...necessarily committed by a public officer in the performance of any legal duty." *Fitzgerald v. Board of County Com'rs for the County of Pottawatomie County*, 2010 WL 1410979 (W.D. Okla. April 2, 2010)(unpublished)(internal citations omitted). As discussed above, this Court has not addressed whether the officers acted lawfully in arresting the Plaintiff, in light of the pending appeal of the Plaintiff's criminal conviction and her application for

---

[7]Plaintiff's amended complaint technically pled a claim for "assault." The Defendant suggests this Court should not allow the Plaintiff to now proceed on a claim for battery since no claim for battery was every pled. However, this Court finds that although the Amended Complaint says "assault" the allegations in the complaint are that the officers used force in arresting Burns and caused harm while making the arrest, thereby putting the Defendants on notice that the Plaintiff was actually pursuing a claim for battery. *See Jones v. Metro. Denver Sewage Disposal Dist. No. 1*, 537 F.Supp. 966, 969 (D. Colo. 1982)

a new trial. Since a determination of whether the officer's were acting lawfully in arresting the Plaintiff is necessary in order to determine whether an action for assault and battery is precluded, this Court dismisses this action without prejudice, with leave to refile. As such, Plaintiff's Motion to Dismiss, without prejudice the claim of assault and battery against the Board is hereby **GRANTED**. This claim is hereby dismissed without prejudice.

### C.    Slander Per Se

The Plaintiff has also alleged a claim of slander per se against the Board claiming Officers Epperly and Holcombe and Defendant Johnson "engaged in a pattern of conduct aimed at defaming Burns by publishing false and defamatory statements to third parties, to wit. that Burns had violated the law by making false 911 calls and was in fact a criminal." [Doc. No. 26] "In order to recover for defamation, a private figure must prove (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication." *Trice v. Burress,* 2006 OK CIV APP 79, ¶10, 137 P.3d 1253, citing *Mitchell v. Griffin Television, L.L.C.,* 2002 OK CIV APP 115, ¶ 5, 60 P.3d 1058, 1061. "A publication is actionable per se only when the language used is susceptible of but one meaning, and that an opprobrious one." *Trice,* 2006 OK CIV APP 79, ¶10, 137 P.3d at 1257, citing *Krebsbach v. Henley,* 1986 OK 58, ¶ 18, 725 P.2d 852, 856. "If the statement 'has no overt opprobrious connotations,' and '[a]ny defamatory meaning ... come[s] in the form of insinuation from the language,' '[t]his places the allegation in the realm of slander per quod,' requiring the pleading and proof of special damages." *Id.*

In this case the Plaintiff stated in her deposition that she had no knowledge as to whether any

of the Defendants were saying false things about her:

> Q:     Do you know if Jennifer Johnson has gone around and said false things about you?
> A:     No.
> Q:     Do you know if Officer Holcombe has gone around saying false things about you?
> A:     No.
> Q:     Do you know if Officer Epperly has been going around saying false things about you?
> A:     No.
> [Doc. No 75-2]

Further the Plaintiff argues in her briefs that Officers Epperly and Holcombe made statements to Burns's supervisors at McDonald's she was prank calling 911 when in fact, she never called 911, but rather, admits to calling and texting the Seminole dispatch center numerous times and hanging up. Burns stated in her deposition:

> Q:     Now it says here, "I have tested and called officers and police stations several times and was calling and texting to Seminole dispatch." Do you see that?
> A:     Yeah.
> Q:     Is that true?
> A:     That is what he told me to write.
> Q:     Is that true?
> A:     Yeah.
> Q:     You had been doing that correct?
> A:     Yeah.
>
> . . .
>
> A:     . . . And I went around all the counters and was walking up there to walk to them and then they came behind the counter and arrest me.
> Q:     Okay. Did you understand why they were there?
> A:     They said for calling 911.
> Q:     Now you know that you had been calling police stations and police officers in the days leading up to your arrest, right?
> A:     Yeah.
> Q:     You know that you had been calling the 911 dispatch center,

correct?

A:      Yeah.

[Doc. No. 75-2]

The Plaintiff also contends that the officers called her a criminal, however, the Plaintiff can provide no proof of this statement. The Plaintiff offers no affidavits of anyone who heard this statement and the Plaintiff herself stated she knows of no false statements made by any of the Defendants. Although the Court will construe the record in a light favorable to the non moving party, "because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record. . ." *Thomson v. Salt Lake County,* 584 F.3d 1304, 1312 (10th Cir.2009)(internal citations omitted); *see also Estate of Larsen ex rel. Sturdivan v. Murr,* 511 F.3d 1255, 1258 (10th Cir.2008).

Based on the Plaintiff's admissions in her deposition, this Court finds the Plaintiff has no evidence that the Defendants made any false or defamatory statements which resulted in harm to her. She admitted that she is unaware of any statements made by any of the individual defendants about her which are false. In her briefs to this Court she claims the Defendant officers made false statements that she called 911 when in fact, she only called the 911 dispatch center, however, the Plaintiff must show that the Defendant's statements were made in at least a negligent manner and Plaintiff's contentions are merely a matter of choice of words. There is no evidence to suggest the Defendants knew or believed the Plaintiff was not actually calling 911 and instead chose to negligently spread false statements.

For these reasons, the Board's Motion for Summary Judgment as to the Plaintiff's claim for Slander Per Se is hereby **GRANTED**.

### D.      Negligence

The Plaintiff alleges the Board "had a duty to the Plaintiff and all those persons who may have reason to have into contact with the officers and employees of the County, to properly select its police officers and to properly train them as to the laws of the (sic) the state of Oklahoma and the United States, along with the correct procedures and policies of the County and its police force." [Doc. No. 26]. Plaintiff claims the Defendants breached their duties to the Plaintiff "including, but not limited to, the following particulars:"

    a.      failure to select and employ qualified officers and employees; and

    b.      failure to terminate the employment of substandard and dangerous officers and employees when put on notice of employees' deficiencies; and

    c.      failure to properly train its police officers on the righteous boundaries of their police powers; and

    d.      failure to properly train its officers and employees as to proper arrest techniques and policy; and

    e.      failure to properly maintain and update its system of posting and removing arrest warrants.

    f.      failure to use the appropriate amount of force in an arrest so as to not injure the Plaintiff.

    g.      failure to institute appropriate call center policies to protect citizens from employee abuse.

[Doc. No. 26]

The Board argues it is immune from suit under the GTCA from claims regarding adoption or enforcement of policies or regarding negligent hiring or firing of employees. This Court agrees. 51 O.S. §155(4)(5) states:

> The state or a political subdivision shall not be liable if a loss or claim results from:
> . . .
> 4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;
> 5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision

or its employees;

The language of the GTCA as well as recent case law construing these provisions makes clear the state and/or a political subdivision is not subject to suit for discretionary acts such as hiring, supervising, and training employees, as well as enforcement or adoption of rules or policies. See *Elizabeth S. v. Oklahoma City Public Schools*, 2008 WL 4147572 (Sept. 3, 2008)(Unpublished); *Ochoa v. Taylor*, 1981 OK 120, 635 P.2d 604. Having reviewed the Plaintiff's allegations of negligence against the Board set forth in subsections (a)-(g) of the Complaint and listed above, this Court finds that all but one of these allegations fall within the Board's discretionary authority and policy making powers specifically exempted by the GTCA.

Plaintiff makes one claim against the Board claiming liability because officers Holcombe and Epperly negligently used an inappropriate amount of force in arresting Burns. The Oklahoma Supreme Court recently addressed the standard of care for police officers in *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dept.*, 2010 OK 9, 230 P.3d 869, holding:

> a police officer has a special dispensation from the duty of ordinary care not to endanger others. **A police officer's duty is very specific: it is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest.** In applying this standard, an officer's subjective mistake of fact or law is irrelevant, including whether he (she) is acting in good faith or bad. The question is whether the objective facts support the degree of force employed.
> Id. at ¶25, 880.

As this Court previously discussed in section I(B) of this Opinion and Order, the force used by Officers Epperly and Holcombe in arresting the Plaintiff was minimal. She admitted that she had only a bruise and some swelling which was treated by some medication which she did not take as directed and by wearing a brace only occasionally. The Plaintiff also admitted she did not complain

to the officers that the handcuffs hurt her or were too tight. As discussed earlier, this Court has reviewed the surveillance video of the arrest and has observed the arresting officers escorting the Plaintiff without any struggle or suggestion that any force was used, much less, more force than necessary. As such, this Court finds there is no merit to the Plaintiff's claim for negligence against the Board.

For the foregoing reasons, the Board's Motion for Summary Judgment as to Plaintiff's negligence claims is hereby **GRANTED**.

**CONCLUSION**

For the foregoing reasons, the Court finds Defendant Board of County Commissioner of Seminole Count's Motion For Summary Judgment [Doc. No. 70] is **GRANTED IN PART**, and **DENIED IN PART**, Defendants Garold Holcombe and Chris Epperly's Motion for Summary Judgment [Doc. No. 75] is **GRANTED IN PART**, and **DENIED IN PART**, Defendant Jennifer Johnson's Motion for Summary Judgment [Doc. No. 74] is **GRANTED IN PART**, and **DENIED IN PART** and Plaintiff's Motion to Dismiss, without prejudice, [Doc. No. 95] is **GRANTED IN PART**, and **DENIED IN PART**.

Further, Defendants' Motions to Strike Plaintiff's Exhibits [Doc. Nos. 111 and 125] are **GRANTED IN PART** and **DENIED IN PART**, and Defendant Board of County Commissioner of Seminole Count's Motions to Strike Plaintiff's Motion for Summary Judgment [Doc. Nos. 92 and 94] and the Defendants' Motion for Guidance from the Court are deemed **MOOT**.

**IT IS SO ORDERED** this 12th day of July, 2010.

James H. Payne
United States District Judge
Eastern District of Oklahoma